(C.D. 3817)

Los Angeles Imp. Company *v*. United States

United States Customs Court, Third Division

(Decided May 1, 1969)

*Glad & Tuttle* (*Edward N. Glad* of counsel) for the plaintiff.
*William D. Ruckelshaus*, Assistant Attorney General (*Glenn E. Harris* and *Steven R. Sosnov*, trial attorneys), for the defendant.

Before Richardson, Landis, and Rosenstein, Judges

Rosenstein, Judge: The sole question herein is whether plaintiff has overcome the presumption of correctness attaching to the collector's action in assessing the full rate of duty of 10 cents per pound and 45 per centum ad valorem on dried mushrooms (Boletus edulis) classified under paragraph 768, Tariff Act of 1930, pursuant to the President's Proclamation of August 1, 1951, T.D. 52788, carrying out the provisions of section 5 of the Trade Agreements Extension Act of 1951, 65 Stat. 72, T.D. 52772. This proclamation suspends reduced rates of duty established pursuant to trade agreements with respect to imports from Communist dominated or controlled countries and areas.

Plaintiff does not dispute its classification, but contends that the merchandise at bar, which was exported from Hamburg, West Germany, is a product of West Germany and therefore entitled to the reduced rate of duty of 4.5 cents per pound and 22½ per centum ad valorem negotiated at the 1960–61 Tariff Conference and given effect in Presidential Proclamation No. 3479 of June 20, 1962, T.D. 55649. The provisions in issue are as follows:

Paragraph 768, Tariff Act of 1930:

> Mushrooms, fresh or dried, 10 cents per pound and 45 per centum ad valorem; * * *.

*Idem*, as modified by T.D. 55649:

> Mushrooms:
> Dried_____ 4.5¢ per lb. and
> 22½% ad val.

Presidential Proclamation of August 1, 1951, T.D. 52788, states in pertinent part:

> WHEREAS sections 5 * * * of the Trade Agreements Extension Act of 1951 (Public Law 50, 82d Congress) provide as follows:
>
>> Sec. 5. As soon as practicable, the President shall take such action as is necessary to suspend, withdraw or prevent the application of any reduction in any rate of duty, or binding of any existing customs or excise treatment, or other concession contained in any trade agreement entered into under authority of section 350 of the Tariff Act of 1930, as amended and extended, to imports from the Union of Soviet Socialist Republics and to imports from any nation or area dominated or controlled by the foreign government or foreign organization controlling the world Communist movement.

> \*      \*      \*      \*      \*      \*      \*

## PART I

> That the application of reduced rates of duty (including rates of import tax) established pursuant to trade agreements heretofore or hereafter entered into * * * shall be suspended with respect to imports from such nations and areas referred to in section 5 as may be specified in any notification pursuant to this part of this proclamation given by the President to the Secretary of the Treasury * * *. For the purposes of this part the term "imports from such nations and areas" shall mean articles imported directly or indirectly into the United States from nations or areas specified in an effective notification, but shall not in any case include articles the growth, produce, or manufacture of any other nation or area.

The record consists of the testimony of Max Ringel, Import Specialist at Los Angeles, who testified pursuant to subpoena; the deposition taken pursuant to commission of Georg Moebus, the sole owner and export manager of Julius Von Engelbrechten, Hamburg, West Germany, the firm which shipped the mushrooms in question to plaintiff; the subpoena duces tecum served on Ringel; and a Customs Information Exchange letter, dated May 21, 1963, from the New York Appraiser of Merchandise to customs officers, concerning a different importation of dried mushrooms shipped by Julius Von Engelbrechten, suggesting that other importations from this shipper be scrutinized to determine if the country of origin is truly indicated.

Moebus deposed, in response to interrogatories, that he is personally familiar with the shipment of dried mushrooms involved herein; that they were purchased from Franz Bruckdorfer, "Dreieck near Zeiesel (Bavarian Forest) P.O. Box 40"; that he did not remember the exact delivered quantity and would have to search his records; and that he would have to check his files to find the date of delivery which "probably" was on the 13th of October or 24th of November, 1961. The

shipment herein was supervised by warehouse personnel, not by him. He received the mushrooms in a dried state; otherwise, they would rot. He is quite certain that the mushrooms he shipped to plaintiff are the ones involved in this litigation. After he obtained the mushrooms, which are usually packed in paper bags, they were put into wax paper lined export cases; no further processing was done. He has no personal knowledge as to where the mushrooms were grown or gathered. The shipper could not supply copies of purchase orders or invoices as his office files were destroyed on February 17, 1962. He has purchased mushrooms which may have been grown or gathered in Communist dominated countries or areas as he buys them "from all countries where mushrooms grow."

Mr. Ringel testified that he advisorily classified the merchandise at bar as dried mushrooms from an East European occupied area on the basis of information in his files.

A considerable portion of the trial was devoted to defense counsel's objections to the admission of the Customs Information Exchange letter into evidence. As we do not deem the document to be material to our decision, it will not be considered further.

It was incumbent upon plaintiff to establish that the collector erred in his presumptively correct finding that the mushrooms were "imported directly or indirectly" from a Communist dominated nation or area. *United States* v. *Dessy Enterprises, Inc.*, 47 CCPA 16, C.A.D. 722 (1959). Plaintiff attempted to discharge its burden by proving that the merchandise was grown in West Germany.

The record fails *in toto* to prove plaintiff's claim "that the mushrooms herein originated in West Germany in the Bavarian Forest" (brief, page 3).

Although the shipper allegedly obtained the mushrooms from one Franz Bruckdorfer, who assertedly lives near the Bavarian Forest, there is nothing in the record to establish where or how the mushrooms were grown or dried or, in fact, whether Bruckdorfer, who refused to answer interrogatories sent out under plaintiff's commission, is a grower, wholesaler or distributor. The destruction of the shipper's files does not relieve plaintiff from discharging its burden of proof herein.

Furthermore, the mere repackaging of the mushrooms into export cases would not constitute a break in the connection between the imports and their country of origin. *United States* v. *Hercules Antiques, The Danwill Company*, 44 CCPA 209, C.A.D. 662 (1957).

Plaintiff has failed to prove that the collector erred in denying a reduced rate of duty on the mushrooms at bar as products of a Communist country.

The protest is overruled. Judgment will be entered accordingly.